UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

HERBERT EDWARD WOODALL,

    Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　　　Case No. 2:10-cv-274
　　　　　　　　　　　　　　　　　　　　　　　　　　HON. ROBERT HOLMES BELL
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Herbert Edward Woodall filed this action seeking judicial review of the final decision of the Commissioner of Social Security denying his request for disability insurance benefits for the period 1997 to January 2005. Plaintiff alleges that he became disabled as a result of a diving accident in 1997. He filed an application for benefits in 2002, but his claim was denied. Plaintiff did not pursue administrative appeals or seek judicial review of that decision. Tr. at 238-239. In 2003, Plaintiff filed a new application for disability benefits. Tr. at 239-240. Administrative Law Judge ("ALJ") O'Dowd held a hearing in 2006 and subsequently issued a decision denying Plaintiff's claim for benefits. Upon an appeal, the undersigned issued a Report and Recommendation recommending that the Court find that medical evidence supported the Commissioner's finding that in 2002 and 2003 Plaintiff was not disabled. Tr. at 333. However, the undersigned recommended that the Court conclude that the evidence showed that Plaintiff became disabled "prior to the time of the hearing in 2006," and recommended a remand for purposes of determining when plaintiff became disabled. Tr. at 334. District Judge Robert Holmes Bell adopted the Report and Recommendation. Tr. at 338. On remand, a new ALJ held a hearing and awarded

benefits beginning January 3, 2005. Plaintiff filed exceptions to the ALJ's decision with the Appeals Council, but the Council declined to assume jurisdiction, rendering the ALJ's decision the final decision of the Commissioner. Tr. at 281.

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's decision denying benefits. A denial of benefits is conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g). In reviewing the Commissioner's denial of disability benefits, this Court is limited to evaluating whether substantial evidence supports the ALJ's findings and whether the ALJ applied the appropriate legal standard. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court is required to review the entire administrative record in determining whether substantial evidence supports the Commissioner's decision. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). This Court is not to reverse the decision of the Commissioner "merely because there exists in the record in the record substantial evidence to support a different conclusion." *Id*. The Court is not to review the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

The ALJ found that Plaintiff became disabled in the beginning of 2005, and awarded benefits beginning on January 3, 2005. This Court has previously decided that substantial evidence supported the Commissioner's decision that Plaintiff was not disabled through 2003. As noted in the 2006 Report and Recommendation, "the medical evidence of record does support the Commissioner's finding that in 2002 and 2003 Plaintiff was capable of substantial gainful activity

and could perform sedentary work as found by the Commissioner.  The ALJ relied upon the decisions of the treating physicians in reaching the determination that plaintiff was not disabled." Tr. at 333.  It is well established that questions decided on appeal are res judicata on a subsequent appeal and throughout all subsequent stages of the action.  *Roberts v. Cooper*, 61 U.S. 467, 481 (1857).  A court's "power to reach a result inconsistent with its prior decision in the same case is to be exercised very sparingly, and only under extraordinary conditions…such as if [the] prior opinion was a clearly erroneous decision which would work a manifest injustice." *In re Kenneth Allen Knight Trust*, 303 F.3d 671, 677-78 (6th Cir. 2002).  Here, Plaintiff has not  provided any persuasive justification to reverse the prior decision.  Since Plaintiff has failed to show that this case involves an extraordinary condition which would entitle the court to reach a result inconsistent with its prior decision, the prior decision that Plaintiff was not disabled through 2003 cannot be reversed.

Even if Plaintiff's contention was not barred by the "law of the case doctrine," the record clearly establishes that Plaintiff was not disabled prior to the beginning of 2005.  Plaintiff alleges that he was disabled as a result of diving accident in 1997.  However, Plaintiff received no medical treatment between 1998 and mid-2002. When Dr. Kristin Lelvis examined Plaintiff in 2002, she concluded that Plaintiff's pain was not radicular in nature.  Tr. at 149.  Physical examination findings were fairly normal, with bilateral negative straight leg raising tests, full strength in the lower extremities, and normal reflexes.  Although the tone of Plaintiff's paraspinal muscles was increased, they were not tender.  Tr. at 149.  A CT scan showed fractures at L2 and L3 with degenerative disc disease in the lumbar spine.  Tr. at 149.  Dr. Lelvis recommended physical therapy and an ibuprofen dose of 400 mg twice a day.  Tr. at 150.  This "very conservative treatment" (Tr. at 150) suggests that Plaintiff did not have a disabling condition in 2002.  Although Plaintiff argues that he could not

afford treatment, this does not change the doctor's finding that Plaintiff did not need any narcotics or other prescription-strength pain remedies.

Plaintiff underwent a consultative examination in September of 2002 at Michigan Medical Consultants. The physical findings were mostly normal, with mild dexterity loss and decreased left grip strength. Tr. at 153. With regard to the lumbar spine, Plaintiff's straight leg raising tests were bilaterally negative. In addition, Plaintiff did not have paravertebral muscle spasm, could get on and off the table satisfactorily, and could heel/toe walk, squat, and hop normally. Tr. at 153. Plaintiff also had full range of motion. Tr. at 154-55. Neurologically, Plaintiff had intact cranial nerves, normal muscle strength and tone, normal senses, normal reflexes, a negative Romberg's sign, and normal gait. Tr. at 155. Overall, these findings support the ALJ's conclusion that Plaintiff could perform at least sedentary work in 2002.

Plaintiff also saw Dr. Richard Ganzhorn in September 2002. Dr. Ganzhorn noted a complaint of right foot numbness and back pain, but also observed good reflexes, strength, and heel/toe walking. Tr. at 158. X-rays showed no abnormalities. Tr. at 158. The doctor told Plaintiff to return to clinic as needed (RTC PRN) and gave him samples of the nonsteroidal anti-inflammatory drug Celebrex. Tr. at 158. Dr. Ganzhorn's clinical findings are consistent with the findings of other doctors and with the ALJ's finding that Plaintiff could do at least some work. A MRI showed only mild disc desiccation and an abnormality at L5-S1 causing mild effacement of the thecal sac without encroachment. Tr. at 171.

In early 2003, Dr. Ganzhorn filled out a form based on his September 2002 visit with Plaintiff. Dr. Ganzhorn noted that Plaintiff could occasionally lift 25 pounds, frequently lift 10 pounds, and could repetitively use his hands and arms. Tr. at 170. However, Dr. Ganzhorn stated

that Plaintiff could only stand, walk, and sit for one hour each. Tr. at 170. He wrote that Plaintiff needed assistance "with heavy household and outside chores." Tr. at 170. Dr. Ganzhorn, however, offered no explanation as to why Plaintiff's walking, sitting, and standing abilities were so limited. Nor did he explain why Plaintiff could only sit, stand, or walk for an hour but could do chores which were not "heavy" without assistance. On the other hand, the ALJ observed that the sitting/standing/walking limitations were not consistent with the treatment notes. Tr. at 313. Given the modest treatment and clinical findings, the ALJ was justified in not accepting the proposed limitations in sitting, standing, and walking. Tr. at 313. Indeed, in a later form completed once Plaintiff's abilities had deteriorated in 2005, Dr. Ganzhorn stated Plaintiff could sit for two hours a day. Tr. at 203.

In March 2003, Plaintiff had a bump on his eye removed at a hospital. Tr. at 272-75. At that time, he was on no medication at all. Tr. at 272. Although Plaintiff's eye condition is not relevant to this case, the existence of the treatment record shows that Plaintiff was able to access health care resources when necessary. It also suggests that Plaintiff was not taking medication for any musculoskeletal condition.

In June 2003, Dr. John Baritone reviewed the medical evidence and concluded that Plaintiff could perform light work. Plaintiff could lift 20 pounds frequently and 10 pounds occasionally, and could sit and stand for six hours each workday. Tr. at 183. Also, Plaintiff could occasionally perform postural activities like climbing stairs and kneeling. Tr. at 184. Plaintiff was limited to frequent handling on the left side, but was otherwise unlimited in his manipulative capabilities. Tr. at 185. Dr. Baritone's opinion is consistent with the ALJ's determination.

A conclusory statement from Dr. D. N. Johnson in July 2003 indicated that Plaintiff could not work for three years. Tr. at 190. It is not clear from the record what relationship Dr. Johnson had with Plaintiff. Moreover, since Dr. Johnson offered no medical data to support his assertion, it was reasonable for the ALJ to discredit such a conclusory opinion.

Plaintiff did not receive any medical treatment in 2004. In 2005, Dr. Ganzhorn wrote a note that Plaintiff may qualify for disability if a repeat MRI showed major abnormalities. Tr. at 200. An x-ray performed in January 2005 showed significant arthritis. Tr. at 200. Plaintiff's January 2005 and April 2005 MRIs showed a worsening in Plaintiff's condition from 2002. Tr. at 199, 206. Later that year, Dr. Ganzhorn wrote that Plaintiff could not lift five pounds and that his landlady did dishes and housework for him because he could not meet his needs in the home. Tr. at 213. Thus, the evidence indicates that Plaintiff's condition significantly worsened in 2005, which is consistent with the ALJ's opinion awarding benefits beginning in January 2005.

Plaintiff offered retrospective opinions from Dr. Lawson, but the ALJ reasonably concluded that the medical evidence dating from the time period in question did not support those opinions. Tr. at 313. In 2008, Dr. Lawson reviewed only radiographs from 1998 (Tr. at 415), and concluded that Plaintiff had been disabled since 1998. Dr. Lawson did not comment on the mostly normal neurological examinations conducted by several doctors or the conservative therapies they recommended. Nor did he state why he disagreed with the opinions of other doctors concerning the time period prior to 2004. His opinion did not contain information about Plaintiff's functional limitations, but rather only stated Plaintiff was disabled in a conclusive manner. Tr. at 313. Thus, it was reasonable for the ALJ to give more weight to the opinion of doctors who actually examined

Plaintiff during the period of time at issue, rather than to the doctor who examined Plaintiff years later and only reviewed imaging studies from 1998.

Plaintiff maintains that the consultative examining doctor at Michigan Medical Consultants was "incompetent, negligent, or worse" and did not run the proper test in September 2002. Pl. Br. at 4-5. Furthermore, Plaintiff criticizes the doctors who provided his examinations and treatment, complaining that his own personal doctors did not run an EMG test until 2008. Pl. Br. at 5. Elsewhere, Plaintiff claims that his MRI tests were "performed with incorrect views." Pl. Br. at 18. However, as noted by Defendant, the Commissioner does not regulate the practice of medicine and cannot be faulted for failing to order tests that were never suggested by any doctor. The examination performed by the consultative examiner was consistent with the examinations performed by the other doctors who saw Plaintiff during the time period in question. In addition, Plaintiff fails to offer any evidence demonstrating incompetence on the part of any of the doctors involved with his examinations or treatment.

Finally, as noted by Defendant, the ALJ did not include a restriction in Plaintiff's residual functional capacity relating to work absences prior to 2005 because such a restriction was not supported by medical evidence. However, beginning in 2005, the ALJ found that Plaintiff could not work for 2 to 3 days per month due to pain. Tr. at 314. The ALJ noted that Plaintiff could not maintain employment with that number of absences. The vocational expert also testified that such an individual could not perform any jobs. Tr. at 436. Thus, the ALJ reasonably concluded that Plaintiff became disabled at that point. Tr. at 315-16.

Substantial evidence supports the ALJ's findings that Plaintiff could perform sedentary work and was not disabled prior to January 2005. Even though the nerve damage was a

result of the accident in 1997, the injuries did not become severe enough to entitle Plaintiff to benefits until 2005.  Accordingly, for the foregoing reasons, it is respectfully recommended that the decision of the Commissioner be affirmed.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3.  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P.  Greeley
TIMOTHY P.  GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   June 24, 2011